**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re:

                                         Case No. 23-49817

**Residents First, LLC,**                          Chapter 11

                                          Hon. Mark A. Randon

       Debtor.

_____/

## DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION

**PREPARED BY**:

HEILMAN LAW PLLC
Ryan D. Heilman (P63952)
Attorneys for Debtor
40900 Woodward Ave., Suite 111
Bloomfield Hills, MI 48304
(248) 835-4745
ryan@heilmanlaw.com

## INTRODUCTION

      Residents First, LLC ("Debtor") proposes this plan of reorganization (the "Plan") for the resolution of outstanding claims against and interests in the Debtor pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Subject to the terms of this Plan, this Plan contemplates the Debtor's reorganization. The Debtor is the proponent of the Plan under Bankruptcy Code sections 1189(a) and 1129.

## BRIEF HISTORY OF DEBTOR'S BUSINESS

      Debtor manages six separate manufactured mobile housing communities. Debtor handles all leasing, rent collection, maintenance, landscaping, utilities, customer relations, and all other aspects relating to maintenance and management of the communities. The communities are each related companies owned, indirectly, by Debtor and various relatives of Debtor and certain related trusts. Debtor was organized under the laws of the state of Michigan in 2010 originally under the name Reliance Management Associates, LLC. Debtor changed its name to Residents First, LLC on January 1, 2021 and operates its business of its office in Birmingham, Michigan. Debtor's principal is Ara Darakjian (Manager), who owns 100% of the equity interests in Debtor through his wholly owned company TIR Equities, LLC.

1

Debtor's business operated at a loss throughout 2023 largely, but not solely, due to costs and expenses associated with litigation with Champion Home Builders, Inc. ("CHB"). On October 3, 2023, CHB obtained a judgment against Debtor in the amount of $478,864.90, an amount which Debtor is not able to pay. Anticipated efforts by CHB to garnish or otherwise execute on the judgment would likely have left Debtor without resources necessary to continue operations. To avoid a cessation of operations and resulting liquidation, Debtor commenced this Chapter 11 proceeding to and provide Debtor with an opportunity to reorganize for the benefit of all creditors.

Through this proposed Plan, Debtor intends to reorganized and continue operating its business, and to make pro rata distributions to General Unsecured Creditors equal to Debtor's projected disposable income during the three-year Plan Term, as set forth below.

## PLAN SUPPORT AGREEMENT

Debtor has negotiated an agreement in principle with Founding Partners for support of Debtor's reorganization efforts. Under this agreement, if the Plan is confirmed, Debtor will assume its Property Management Agreement with Founding Partners with revisions through which Founding Partners will ensure that Debtor has sufficient funds to (i) operate, (ii) pay all Debtor's secured obligations and lease obligations, (iii) pay all professional fees and Administrative Claims Allowed in this Chapter 11 Case, (iv) pay all Allowed Priority Claims, and (v) distribute a minimum distribution on behalf of General Unsecured Creditors of no less than $15,000 per year during the Plan Term, for total distributions to General Unsecured Creditors of $45,000 (the "Support Agreement").

The Property Management Agreement permits termination by Founding Partners or Debtor with or without cause. As part of the Support Agreement, Founding Partners agrees to not terminate the Property Management Agreement except with cause, provided, however, that in addition to the events giving rise to "Cause" laid out in the Property Management Agreement, Cause for termination shall also include (i) a change in control of Debtor through which Debtor's principal, Ara Darakjian, is no longer in control of Debtor's day-to-day operations, and (ii) any lawsuit or similar proceeding by the Debtor, on behalf of the Debtor whether derivatively or otherwise against Founding Partners or any of Founding Partners' subsidiaries or affiliates. If the Property Management Agreement is terminated for cause, the Support Agreement shall also be automatically terminated.

If the Plan is confirmed on a consensual basis, Debtor will waive and release all claims and potential claims against Founding Partners, its subsidiaries and affiliates (collectively, "FP Affiliates"), as well as all affiliates and insiders of Debtor, as those terms are used in 11 U.S.C. §§ 101(2) and (31), including Mr. Darakjian, his relatives, and all entities owned or controlled by Mr. Darakjian or his relatives (the "Related Parties"). (Due to the interrelationship between Debtor and Founding Partners, all or essentially all affiliates of Debtor are also affiliates of Founding Partners.)

If, however, the Plan is confirmed under 11 U.S.C. § 1191(b), no claims or potential claims against the foregoing Related Parties will be waived. Instead, the Subchapter V Trustee, or such other person as is appointed by the Court, shall evaluate all claims or potential claims against the Related Parties and shall determine whether any actions or lawsuits should be brought against any of the Related Parties and, if so, shall have full authority to commence and prosecute such lawsuit or similar action (a "Related Party Action"). However, as set forth above, if Founding Partners or any of the FP Affiliates are subject to a Related Party Action, Founding Partners may terminate the Property Management Agreement and the Support Agreement for Cause. Further, Founding Partners shall in no event be required to fund any Related Party Action or any investigation into or preparation of any Related Party Action. For clarification, the investigation and report to be prepared by the Subchapter V Trustee pursuant to the Court's Order Granting Subchapter V Trustee Expanded Powers (the "Expanded Powers Order") [ECF # 50] is not considered an investigation into or preparation for a Related Party Action for these purposes.

In the event that the Property Management Agreement and Support Agreement are terminated, Debtor will promptly liquidate its assets and will cooperate with the Subchapter V Trustee to disburse the liquidation proceeds to all creditors in the order of their priorities under the Code.

A full copy of the Property Management Agreement as revised by the Support Agreement, will be filed as an additional Exhibit to the Plan once finalized.

## PROJECTIONS

The Debtor's Projections, to be attached as **Exhibit A**, show Debtor's Projected Disposable Income and how the Projected Disposable Income has been calculated. The projections are based on Debtor's current and historical operations, and revisions to Debtor's Property Management Agreement with Founding Partners, LLC ("Founding Partners"), a related party that controls each of the manufactured mobile housing communities managed by Debtor. The projections are Debtor's best estimate of the Debtor's revenues and expenses over the next three years and the resulting disposable income available for distribution to General Unsecured Creditors.

The projections begin on May 1, 2024. The actual commencement of the three-year Plan Term (as defined below) may commence later depending on the Confirmation Date. The starting cash amount is Debtor's best estimate of cash on hand as of May 1, 2024 given expected receipts and payments before that date. Debtor's receipts can be difficult to project and the starting cash is an estimate only. Debtor has smoothed ordinary operating payment receipts – Debtor does not anticipate that receipts will be received precisely as and when projected but the projections show Debtor's best estimates of its projected future financial performance. Nevertheless, all projections are necessarily uncertain and these projections are no different. Debtor does not guaranty or warrant the accuracy of the projections and actual results may be better or worse.

As shown in the projections, and based on the Support Agreement described above, Debtor estimates that by continuing to operate the business, Debtor will be able

to make total payments to General Unsecured Creditors over a three-year period of **$15,000 per year for total payments of $45,000,** after all payments required under the Plan on account of all secured, administrative and priority claims. Based on Debtor's anticipated agreement with Founding Partners, this distribution is not expected to be decreased due to the total amount of administrative and priority claims allowed against Debtor, unless a Related Party Action is commenced. Although it is possible that Debtor's actual disposable income during the Plan Term will exceed the projected disposable income, based on Debtor's historical operations and history of generating losses, Debtor does not expect actual results to exceed the projected disposable income.

## LIQUIDATION ANALYSIS

The Debtor's liquidation analysis, to be attached as **Exhibit B**, shows the likely result of near-immediate liquidation of all Debtor's assets, and attempts to calculate the resulting net value available for unsecured creditors, after costs, expenses, attorney fees, and trustee fees. All values stated in the Liquidation Analysis are based on Debtor's good faith estimates, and have not been subject to audit or appraisal. The estimates shall not be construed in any way as guarantees, warranties or anything more than current estimates, and shall not be binding on Debtor or any party-in-interest.

As shown in more detail in the liquidation analysis, Debtor anticipates that there will be insufficient funds in a liquidation to pay all secured, administrative and priority claims, and that general unsecured creditors would receive no distribution whatsoever in the event of a liquidation.

Liquidation values of physical assets are substantially similar to the values listed in Debtor's Schedules. Liquidation values of cash, receivables and similar assets are based on Debtor's projected cash and receivables as of May 1, 2024, actual values may differ significantly from these projections.

Debtor's liquidation analysis assumes that Debtor will reject all leases and will immediately return all vehicles to the respective leasing company but will remain liable for the remaining months under the lease. It is possible that in a liquidation, the Debtor or other liquidator could obtain a discount against the remaining months' lease obligations by returning the vehicles. Any liability to vehicle lessors after the return of the vehicles is treated as General Unsecured Claims. Because the liquidation analysis shows no likelihood of any distribution on account of General Unsecured Claims, the amount of these Claims are ultimately immaterial to the results of the liquidation analysis.

The liquidation analysis also assumes that Debtor will use all available collateral securing a secured obligation to pay that obligation. Most notably, this includes the loan obligations to the Small Business Administration ("SBA") in the approximate amount of $98,000 (the "SBA Loan"), which is secured by substantially all Debtor's assets, whereas if the Plan is confirmed, Debtor intends to continuing making interest only payments on the SBA Loan until the principal of the SBA Loan becomes due and owing according to its terms long after the end of the Plan Term. As shown in the liquidation

4

analysis, the SBA Loan alone exceeds the total anticipated value of all Debtor's assets before even considering administrative and priority claims.

# ARTICLE I
## DEFINITIONS, RULES OF
## INTERPRETATION AND COMPUTATION OF TIME

### 1.1    **Scope of Definitions**.

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given that term in the Bankruptcy Code or the Bankruptcy Rules.

### 1.2    **Definitions**.

1.2.1   "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of Allowed Secured Claim is entitled to priority under sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise.  This definition does not apply to or include U.S. Trustee quarterly fees or any other amounts owed to the U.S. Trustee. Any references in this Plan to the term "Administrative Claim" shall not apply to the U.S. Trustee.

1.2.2   "**Administrative Claims Bar Date**" means the deadline for requests for payment of Administrative Claims (or proofs of claims requesting Administrative Claim status if permitted by Court order), which shall be 30 days after the Effective Date, unless the Administrative Claim is of a kind that is subject to an earlier Bar Date, in which case the earlier Bar Date shall control. Debtor shall not be required to make any payments or distributions on account of Administrative Claims not properly asserted before the Administrative Claims Bar Date unless such date is extended by Order of the Court.

1.2.3   "**Affiliate**" has the meaning set forth in 11 U.S.C. § 101(2).

1.2.4   "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class.

1.2.5   "**Allowed Claim**" means a Claim or any portion of the Claim,

a.      that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

b.      as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

c.      as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

d.      that is expressly Allowed in a liquidated amount in this Plan.

1.2.6   "**Allowed Class . . . Claim**" or "**Allowed Class ... Interest**" means an Allowed Claim or an Allowed Interest in the specified Class.

1.2.7   "**Allowed Interest**" means the ownership Interest in Debtor. No other asserted Interests, if any, shall be Allowed Interests.

1.2.8   "**Ballot**" means each of the ballot forms that is distributed with the Plan to Holders of Claims and Interests included in Classes that are Impaired under this Plan and entitled to vote under the terms of this Plan.

1.2.9   "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date.

1.2.10  "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.11  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.12  "**Bar Date**" means the deadlines set, or to be set, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case or any other deadline for the assertion of Claims, Administrative Claims or other rights to relief as set by Order of the Bankruptcy Court (which may include the Confirmation Order), the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Rules for the Bankruptcy

Court for the Eastern District of Michigan.

1.2.13 "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.14 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.15 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Actions, unless otherwise waived or released by Debtor to the extent the Cause of Action is a Cause of Action held by Debtor.

1.2.16 "**Chapter 11 Case**", "**Case**" or "**Bankruptcy Case**" means this chapter 11 case number 22-40197, currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.17 "**CHB**" means Champion Home Builders, Inc., a creditor of Debtor.

1.2.18 "**Claim**" means a claim against Debtor, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.19 "**Class**" means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.20 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.21 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.22 "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and related matters, as may be adjourned or continued from time to time.

1.2.23 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.24 "**Creditor**" means any creditor of Debtor as defined in section 101(10) of the Bankruptcy Code.

1.2.25 "**Cure Claims**" means any amount required to be paid under section 365(b)(1) in connection with the assumption of executory contracts or unexpired leases.

1.2.26 "**Debtor**" means Residents First, LLC and, after the Effective Date, Reorganized Debtor.

1.2.27 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.28 "**Disposable Income**" has the meaning set forth in 11 U.S.C. § 1191(d).

1.2.29 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.30 "**Effective Date**" means the first day of the first month after the Confirmation Order becomes a Final Order.

1.2.31 "**Entity**" has the meaning set forth at section 101(15) of the Bankruptcy Code.

1.2.32 "**Estate**" means the bankruptcy estate of Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.33 "**Exhibit**" means any exhibit or schedule attached to this Plan including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan.

1.2.34 "**Expanded Powers Order**" means the Court's Order Granting Subchapter V Trustee Expanded Powers [ECF # 50].

1.2.35 "**Founding Partners**" means Founding Partners, LLC, an Affiliate of Debtor and counter-party to the Property Management Agreement and the Support Agreement.

1.2.36 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.37 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.38 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.2.39 "**FP Affiliates**" means all Affiliates of Founding Partners.

1.2.40 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Priority Tax Claim, or Priority Claim. General Unsecured Claims include Claims of Creditors with contracts or unexpired leases that are rejected by Debtor under this Plan or otherwise, and Creditors with Secured Claims to the extent that the amount of the Claim exceeds the value of the collateral securing the Claim, unless the Creditor makes a valid election under 11 U.S.C. § 1111(b)(2).

1.2.41 "**General Unsecured Creditor**" means the Holder of any General Unsecured Claim.

1.2.42 "**Governmental Unit**" has the meaning set forth at section 101(27) of the Bankruptcy Code.

1.2.43 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.44 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.45 "**Insider(s)**" has the meaning set forth at section 101(31) of the Bankruptcy Code.

1.2.46 "**Insider Claim**" means a Claim held by an Insider of Affiliate of Debtor.

1.2.47 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in Debtor.

1.2.48 "**Interest Rate**" means the interest rate set forth in this Plan or, if no specific rate of interest is set forth in this Plan with respect to a Claim which is entitled to be paid with interest, shall mean (a) with respect to a Claim for taxes, the interest rate

9

applicable under non-bankruptcy law, (b) with respect to the SBA Loan, the non-default rate of interest under the terms of the SBA Loan, (c) for all other Claims entitled to interest under the Bankruptcy Code and this Plan, five percent (5%), or (d) if the foregoing Interest Rate is subject to any objection, such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.49 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.50 "**IRS**" means the Internal Revenue Service.

1.2.51 "**Liquidation Analysis**" means the liquidation analysis required by 11 U.S.C. § 1190(1)(B) and attached as Exhibit B.

1.2.52 "**Notice**" with respect to a notice to be provided to Debtor means a written notice delivered to and actually received by Debtor and Debtor's counsel at the addresses set forth herein or such other address as is provided by Debtor or Debtor's counsel.

1.2.53 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.54 "**Petition Date**" means November 8, 2023, the date Debtor Filed its petition for relief in the Bankruptcy Court.

1.2.55 "**Plan**" means this subchapter V plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Case, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended, or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.56 "**Plan Term**" means a three-year period beginning on the date that the first payment to General Unsecured Creditors is due under the Plan and ending on the third anniversary of that date.

1.2.57 "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

1.2.58 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.59 "**Projections**" means the projections of Debtor's revenues, expenses, and income required by 11 U.S.C. § 1190(1)(C) and attached as Exhibit A.

1.2.60 "**Projected Disposable Income**" means the expected Disposable Income projected by Debtor as set forth in the Projections attached as Exhibit A.

1.2.61 "**Proof of Claim**" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

1.2.62 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

1.2.63 "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.64 "**Property Management Agreement**" means the agreement between Debtor and Founding Partners pursuant to which Debtor manages the properties of certain subsidiaries of Founding Partners.

1.2.65 "**Pro Rata**" means (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise and (b) with respect to Interests, at any time, the proportion that the number of Interests held by an Interest Holder in a particular Class or Classes bears to the aggregate number of all Interests (including Disputed Interests, but excluding Disallowed Interests) in such Class or Classes.

1.2.66 "**Reorganized Debto**r" means the Debtor after the Effective Date.

1.2.67 "**Related Parties**" means all Affiliates and Insiders of Debtor, which includes Founding Partners, the FP Affiliates, Mr. Darakjian and his relatives, and all entities owned or controlled by Mr. Darakjian or his relatives.

1.2.68 "**Related Party Action**" means any lawsuit or similar action commenced against any of the Related Parties by Debtor or by any Person acting through or on behalf of Debtor, including any derivative action.

1.2.69 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the Effective Date of this Plan. Retained actions include any and all actions to recover trade claims, accounts receivable and similar ordinary course payments due to Debtor, whether due, overdue or not yet due as of the date of Plan confirmation.

1.2.70 "**SBA**" means the United States Small Business Administration.

1.2.71 "**SBA Loan**" means the loan by the SBA to Debtor in the approximate principal amount of $98,000, secured by substantially all Debtor's assets.

1.2.72 "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.2.73 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by Debtor, as may be amended from time to time.

1.2.74 "**Secured Claim**" means a Claim secured by a security interest in or a lien on property in which Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by Debtor and the Holder of such Claim.

1.2.75 "**Secured Creditor**" means the Holder of an Allowed Secured Claim.

1.2.76 "**Subchapter V Trustee**" means Deborah Fish, the Court-appointed Subchapter V Trustee for this Chapter 11 Case.

1.2.77 "**Support Agreement**" means the revisions to the Property Management Agreement through which Founding Partners has agreed to support Debtor's reorganization and ensure Debtor achieves its Projected Disposable Income, but subject to the Property Management Agreement not be terminated for Cause (as defined in the Property Management Agreement, and revised in the Support Agreement).

1.2.78 "**Unimpaired**" means, with respect to a Claim, any Claim that is not Impaired.

1.2.79 "**Voting Deadline**" means March 11, 2024, or any subsequent deadline that the Bankruptcy Court may set for the receipt of Ballots by Debtor or Debtor's agent.

1.3    **Rules Of Interpretation:**  For purposes of this Plan, unless otherwise provided herein:

1.3.1  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, include, both the singular and the plural.

1.3.2  Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter.

1.3.3  Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be

12

amended, modified, or supplemented.  Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan for all purposes.

1.3.4   Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to Debtor includes the Reorganized Debtor for all periods after the Effective Date.

1.3.5   Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially on such terms and conditions.

1.3.6   The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.7   Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan.

1.4     **Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or deadline expires on a specific date, if the date falls on a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the deadline will expire, on the next day that is not a Saturday, Sunday, or legal holiday.

1.5     **References to Monetary Figures**. All references in this Plan to monetary figures refer to currency of the United States of America.

1.6     **Exhibits**. All Exhibits, including any Exhibits referenced in this Plan, are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor's counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

1.7     **No Admissions; Estimates of Claims**. Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor in any Claims objection or Cause of Action. All estimates of Causes of

Action and Claim amounts listed in this Plan and Exhibits are current estimates only. All Claims amounts and classifications remain subject to the Claims Objection process.

**ARTICLE II**
**CLAIMANTS THAT ARE NOT SUBJECT TO**
**CLASSIFICATION AND ARE NOT ENTITLED TO VOTE ON THE PLAN**
**ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS**

2.1 **Administrative Claims.**

Subject to the provisions of this Plan and upon occurrence of the Effective Date, as soon as possible after an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between Debtor and the Holder of the Administrative Claim (but, in no event later than ten days thereafter), a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment that Debtor and the Holder of the Allowed Administrative Claim shall have agreed upon in writing.

Debtor anticipates administrative claims will be owed to its counsel, the Subchapter V Trustee, to other professionals that may be retained in this case, and to vehicle lessors for post-petition lease expenses and for assuming Debtor's lease agreements, in addition to ordinary course costs and expenses incurred by Debtor in operating its business since the Petition Date. The total of the administrative claims is heavily dependent on the length of time between the filing of this Plan and confirmation, whether objections to confirmation are filed, and the proceedings required to resolve any such objections.

2.2 **Priority Tax Claims.**

2.2.1   Debtor does not believe that it owes any tax liabilities. Neither the IRS nor the Michigan Department of Treasury have filed any Priority Tax Claims as of the date the Plan is filed, and Debtor does not anticipate any Priority Tax Claims will be filed. However, the claim deadline has not yet passed. The Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, payment of the outstanding amount of the Allowed Priority Tax Claim in equal monthly installments commencing on the date that is 60 days after the Effective Date, with interest accruing at the Interest Rate, calculated so that the last monthly payment will occur on or before the third anniversary of the Effective Date. In any event, Debtor shall pay all remaining amounts owed, if any, by no later than the fifth anniversary of the Petition Date. Debtor may pre-pay any Priority Tax Claim. For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. section 507(a) that have been assessed prior to the Petition Date are subject to this section 2.2.

2.2.2   Debtor reserves the right to commence or continue a challenge as to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which

14

challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to any assessment of Debtor's real or personal property that may have been made by the respective taxing authority.

2.3 **Professional Claims.**

2.3.1 **Final Fee Applications.** All final requests for payment of Professional Claims must be Filed within thirty (30) days after the Confirmation Date, or by such later date as set by the Court. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims and expenses will be determined by the Bankruptcy Court and paid by Debtor promptly after they are Allowed as set forth in Section 2.1 (in no event more than seven days after entry of the Order Allowing the Professional Claims), or as otherwise agreed in writing by Debtor and the Professional for reasonable payment terms.

2.3.2 **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor and Reorganized Debtor shall employ and pay Professionals in the ordinary course of business.

2.4 **Pre-petition Administrative Claims.** All Administrative Claims incurred before the Petition Date, including (but not limited to) Administrative Claims arising under 11 U.S.C. § 503(b)(9), if any, must be Filed as a Motion or Application by the Holder of such Claims by any applicable Bar Date as set by the Federal Rules of Bankruptcy Procedures, the Bankruptcy Court's Local Rules, or by Order of the Bankruptcy Court in this Chapter 11 Case. If any Administrative Claim has not been Filed by the Applicable Bar Date, the Administrative Claim shall be disallowed without the need for Debtor to file any objection to the Administrative Claim. If no Bar Date has been set by the Court, the Bar Date shall be thirty (30) days after the Confirmation Date. This section does not apply to pre-petition Administrative Claims that become Administrative Claims through assumption of a pre-petition contract or agreement, which will be treated under Article X below regarding assumptions of leases and contracts.

## ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into three (3) Classes and treats them as follows:

3.1 **Class I**: Class I consists of the SBA's Secured Claim for the SBA Loan and Ally Bank's Secured Claim for the financing of a Dodge Ram Truck (the "Ally Loan").

3.1.1   Debtor shall make all required monthly payments under the non-default terms of the SBA Loan and Ally Loan throughout the Plan Term.

3.1.2   All the terms and provisions of the SBA Loan and Ally Loan shall remain in full force and effect, except that neither the filing of the Petition nor anything between the filing of the Petition and the Effective Date shall be deemed a default under the SBA Loan or Ally Loan provided that Debtor cures any deficiencies within twenty-one (21) days after written notice by the SBA or Ally Bank, respectively.

3.1.3   The SBA Loan and Ally Loan shall continue to accrue interest at the non-default rates set forth in the respective loan documents.

3.1.4   Subject to the terms of this Section 3.1, the SBA and Ally Bank shall retain all rights and remedies as set forth in the SBA Loan and Ally Loan, respectively.

3.1.5   Until payment in full of the SBA Loan, the SBA shall retain all security interests and liens on the property of the Debtor and Reorganized Debtor, including all replacement liens granted in the Final Order Authorizing Use of Cash Collateral and Authorizing Adequate Protection [ECF # 44].

3.1.6   Until payment in full of the Ally Loan, Ally Bank shall retain all security interests and liens on the property of the Debtor and Reorganized Debtor, including the financed Dodge Ram Truck.

3.1.7   The SBA and Ally Bank security interests and liens shall maintain the same priority, validity, and enforceability as existed immediately before the Petition Date. In the event of any default after the Effective Date, not cured as provided for under the terms of the SBA Loan or Ally Loan, the SBA or Ally may exercise any and all secured rights against property subject to its security interest and liens to obtain satisfaction of its Allowed Class I Claim.

3.1.8   Notwithstanding the above, if Founding Partners terminates the Property Management Agreement for cause, the Debtor will commence liquidation. Upon liquidation, the Debtor shall (i) at Ally Bank's option, promptly surrender the Dodge Ram Truck securing the Ally Loan to Ally Bank, or shall sell the Dodge Ram Truck and provide the net proceeds to Ally Bank, and (ii) at the SBA's option, promptly surrender to the SBA all Debtor's property that constitutes collateral for the SBA Loan and as to which the SBA is the first-priority Secured Creditor or shall sell and otherwise liquidate such collateral and provide the net proceeds to the SBA. To the extent the proceeds are less than the amount of the respective Secured Claims, the difference shall be treated as a Class II General Unsecured Claim.

3.1.9   **This Class is Unimpaired.**

3.2   Class II consists of all Allowed General Unsecured Claims. Allowed Claims resulting from the rejection of any contracts or unexpired leases as set forth in Article X shall be included as Class II General Unsecured Claims. The deadline for the

filing of claims has not passed and, accordingly, the final claim amount may differ substantially from Debtor's estimate.

3.2.1   Holders of Allowed Class II Claims shall receive a Pro Rata share of the Projected Disposable Income based on all Class II Allowed Unsecured Claims. Starting one month after the Effective Date annually thereafter for a three-year distribution period (with three distributions), the Reorganized Debtor shall distribute all of its Projected Disposable Income to Class II Creditors (each an "Annual Distribution"). The Annual Distributions shall continue until the earlier of (i) payment of all Class I Claims in full or (ii) three years have passed since the initial distribution, for a maximum of three Annual Distributions. All Annual Distributions shall be distributed to Holders of Allowed Unsecured Claims on a Pro Rata basis.

3.2.2   The Debtor's Projected Disposable Income is set forth in Exhibit A equating to three Annual Distributions of $15,000 each, for total distributions to Class II Creditors in the total amount of $45,000.

3.2.3   Notwithstanding the above, if Founding Partners terminates the Property Management Agreement for cause, the Debtor will commence liquidation. Upon liquidation, as shown in the liquidation analysis, Debtor anticipates there will be no distributions to General Unsecured Creditors. In the event that the liquidation of assets is sufficient to pay all Secured Claims, Administrative Claims and Priority Claims, Debtor shall distribute all remaining proceeds, pro rata, to General Unsecured Creditors until all Class II Claims have been satisfied in full.

3.2.4   In the event that Debtor, the Subchapter V Trustee or any other Person commences a Related Party Action, the proceeds of such Related Party Action, shall be paid first on account of all Administrative Claims and Priority Claims, as well as payment to any Secured Creditor to the extent such Secured Creditor has a valid security interest or lien on the proceeds of the Related Party Action. After all such Claims have been satisfied in full, the remaining proceeds, if any, shall be distributed pro rata to General Unsecured Creditors until all Class II Claims have been satisfied in full.

3.2.5   Notwithstanding anything to the contrary in this Section or any other Section of this Plan, no Class II Claim Holder is entitled under any circumstances to receive more than the Allowed Amount of the Holder's Allowed Claim. No Class II Claims shall bear interest in any amount.

3.2.6   If the Plan is not confirmed, Debtor estimates that Class II General Unsecured Creditors will receive no distributions as substantially all Debtor's assets are subject to the Secured Claims of the SBA and the proceeds of a liquidation, even assuming successful prosecution of Related Party Claims, is unlikely to exceed the amount of the SBA Loan plus all Administrative Claims.

3.2.7   **This Class is Impaired.**

3.1 **Class III**: This Class consists of the Claims of Interests of Debtor.

17

3.1.1   The Holders of Allowed Interests of this Class will retain their Interests in the Reorganized Debtor in the same percentages as held in Debtor.

3.1.2   **This Class will not be Impaired and are deemed to accept the Plan.**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1     Upon the Effective Date, Debtor will become the Reorganized Debtor. The Reorganized Debtor shall continue operating Debtor's business, shall collect all revenues and income, and shall distribute such revenues and income as provided under the terms of this Plan. During the Payment Period, the Reorganized Debtor shall retain Mr. Darakjian as its Manager. The Reorganized Debtor may retain or hire other employees at commercially reasonable rates of compensation.

4.2     **Retention of Causes of Action:** All Causes of Action not waived or released under this Plan, the Confirmation Order or any other Order issued by the Court shall vest with Reorganized Debtor, including all collections of receivables, refunds, deposits and all other amounts owed to Debtor, whether arising before or after the Petition Date.

4.3     **Assumption of Liability and Sources of Funds**:

4.3.1   Reorganized Debtor shall be responsible for satisfying the Allowed Class I Claims in accordance with the terms and provisions of this Plan.

4.3.2   The Reorganized Debtor will retain control of and be responsible for all of Debtor's operations after the Effective Date.

4.3.3   Debtor reasonably believes that future operations and the Support Agreement will enable the Reorganized Debtor to satisfy its obligations under the Plan. Other sources of cash may be explored and utilized by the Reorganized Debtor to the extent that such infusions are necessary or helpful to meet the obligations of the Plan, including post-confirmation loans or equity contributions.

4.3.4   Upon the earlier of the end of the Plan Term or satisfaction of all obligations to all Claim Holders, the Reorganized Debtor will no longer be bound by the provisions of this Plan and will be entitled to conduct its business without Bankruptcy Court supervision under applicable non-bankruptcy law. Nothing in this Section shall be construed as waiving or limiting the Reorganized Debtor's rights and interests under this Plan, to enforce those rights and interests through the Bankruptcy Court, to dispute claims, to bring motions or pursue Causes of Action in the Bankruptcy Court or any other court, or to petition the Bankruptcy Court for the redress of any grievances.

4.4     **Professional Fees:**   Any services performed or expenses incurred by any Professional on behalf of Debtor after the Petition Date but before the Confirmation

Date will be Administrative Claims, will be paid by Reorganized Debtor as set forth in Article II and will be subject to the prior review and approval of the Bankruptcy Court. Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date will be an obligation of the Reorganized Debtor and will not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of Reorganized Debtor shall be billed directly Reorganized Debtor, and the Bankruptcy Court shall review only that portion to which Reorganized Debtor objects. Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

4.5 **Effectuating Documents**: Reorganized Debtor is authorized to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

4.6 **Authorization of the Support Agreement**: Confirmation of the Plan constitutes authorization of the Support Agreement and all terms set forth therein.

## ARTICLE V
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

5.1 **Discharge of Indebtedness**:

5.1.1 **Discharge under § 1191(a)**. In the event this Plan is confirmed under section § 1191(a), except as otherwise explicitly provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in sections 502(g), 502(h), or 502(i), in each case whether or not a Proof of Claim is filed or deemed filed pursuant to section 501.

5.1.2 **Discharge under § 1192(b)**. In the event this Plan is confirmed under section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of the Reorganized Debtor's Payments due during the duration of the Plan, the Court shall grant the Debtor and Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) and allowed under section 503 (the "Discharge Order"). Notwithstanding the forgoing, the court shall not grant the Debtor or the Reorganized Debtor a discharge of any debt to the extent section 523(a) is applicable to a corporate debtor (which Debtor may contest), a debt of the kind specified in section 523(a). As set forth in the Support Agreement, if the Plan is confirmed under § 1191(b),

19

the Related Parties shall retain all claims they may have against the Debtor, whether or not filed as proofs of claim in the Case, and may be used as set offs or recoupment against any Related Party Claims brought by the Debtor or on behalf of Debtor or Debtor's estate.

   5.1.3 **1191(c)(3)(B) Provision.** For the purposes of 11 U.S.C. § 1191(c)(3)(B) and in the event that payments to any creditor are not made as provided in Article III of the Plan to such creditor, then the creditor may make a written demand (the "Demand Notice") to the Reorganized Debtor, with copies to Debtor's counsel and the Subchapter V Trustee, which, at a minimum, must clearly and expressly identify the payments that the Creditor claims were not made. The Reorganized Debtor shall have sixty (60) days from the date the Demand Notice is received by the Reorganized Debtor to (a) cure the payment default or (b) make other mutually agreeable arrangements with the Creditor to resolve the identified payment default. If the payment default identified in the Demand Notice is not cured or not otherwise resolved as provided under the previous sentence, then the affected Creditor may reopen the Subchapter V Case and seek appropriate remedies provided under the Bankruptcy Code; provided, however, that if the Reorganized Debtor cures such the payment default identified in the Demand Notice prior to the Bankruptcy Court entering an order authorizing any relief, the identified payment default shall be deemed cured and the Subchapter V Case shall be immediately closed.

   5.2 **Injunction**. Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all individuals and entities that have held, currently hold, or may hold Claims or Interests against Debtor, or that are claiming by or through any such individual or entity, are permanently enjoined from taking any of the following actions against Reorganized Debtor or its property on account of any such Claims, debts, liabilities, or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or continuing any action in any manner, in any place that does not comply, or is inconsistent, with the provisions of this Plan.

   5.3 **Subchapter V Trustee**. The Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in the Bankruptcy Code until the services of the Subchapter V Trustee are terminated as set forth in this section. Termination of the services of the Subchapter V Trustee shall occur upon the earlier of (i) all payments required by the Plan have been made by Reorganized Debtor, or (ii) the Subchapter V Trustee deems that his statutory obligations have been fulfilled and provides notice of such to Reorganized Debtor. Until termination of the services of the Subchapter V Trustee, Reorganized Debtor shall remain responsible for payment of the reasonable fees of the Subchapter V Trustee, and the Bankruptcy Court shall retain jurisdiction to determine any dispute regarding reasonableness of such fees or the date of termination of the Subchapter V Trustee's services. The Subchapter V Trustee's services will otherwise be terminated in accordance with 11 USC § 1183(c).

5.4     **Related Party Actions.** If the Plan is not confirmed under § 1191(a), the Subchapter V Trustee or any other party-in-interest may request that the Court authorize the Subchapter V Trustee or another Person to be appointed by the Court to review potential Related Party Actions and bring such Related Party Actions if such Person deems that to be appropriate in the totality of the circumstances.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTION

6.1     <u>No Interest on Unsecured Claims</u>. Interest will not accrue or be paid on any General Unsecured Claim.

6.2     <u>Delivery Of Distributions and Notices in General</u>. Distributions to Holders of Allowed Class I Claims and Professional Claims will be made by Reorganized Debtor unless otherwise instructed by the Court or the Subchapter V Trustee if this Plan is confirmed under 11 U.S.C. § 1191(b). All distributions will be made, as applicable: (a) if a Proof of Claim has been filed: at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests; (b) if the Holder has provided any written notices of address changes delivered to Debtor: at such address; (c) if no Proof of Claim has been filed and no notice of address change has been received: at the addresses reflected in the Schedules or the last known address; or (d) if any counsel has appeared in the Chapter 11 Case on the Holder's behalf, at the address of such counsel.

6.3     <u>Undeliverable Distributions and Non-Negotiated Checks</u>. If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Reorganized Debtor or Subchapter V Trustee (as applicable) is notified of the then-current address of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within ninety days after the issuance of the check, the check may be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. The language in this section will not apply to the U.S. Trustee.

6.4     <u>Fractional Payments and Minimum Payments</u>. Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars. The Reorganized Debtor or Subchapter V Trustee shall not be required to make any distributions to creditors in an amount less than $50.

6.5     If the date for any payment or action required of Debtor or Reorganized Debtor under this Confirmation Order or the Plan falls on a date which is not a Business Day, the due date for such payment or action shall automatically be extended to the next occurring Business Day.

## ARTICLE VII
## MODIFICATION OF THE PLAN

7.1     **Modification of Plan**.  Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in the Bankruptcy Code and Bankruptcy Rules, Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, Debtor or Reorganized Debtor may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan. Any amendments to this Plan will otherwise be in accordance with 11 USC Sec. 1193.

7.2     **Effect of Confirmation on Modifications**.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

7.3     **Revocation or Withdrawal of the Plan.**  Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revokes or withdraws the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

## ARTICLE VIII
## JURISDICTION OF THE COURT

8.1     **Jurisdiction**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

8.1.1   The classification of the Claim of any Creditor and the re-examination of Claims Allowed for purposes of voting, and the determination of such objections as may

be filed to Claims of Creditors. The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim, in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

8.1.2   The determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between Debtor and any other party.

8.1.3   The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

8.1.4   The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

8.1.5   The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, Reorganized Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

8.1.6   The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor disputes all or a portion thereof.

8.1.7   The entry of an order determining the validity of any Lien.

8.1.8   The entry of an order concluding and terminating this Case.

## ARTICLE IX
## TITLE TO PROPERTY

9.1.   **Revesting of Assets**.  Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estate (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, right, and Interests of Creditors and equity security Holders. As of and following the Effective Date, the Reorganized Debtor, as provided for under the terms of this Plan, may operate Debtor's business and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order. All Avoidance Actions not waived or released under this Plan or other Order of the Bankruptcy Court shall vest with Reorganized Debtor and Reorganized Debtor may pursue, settle and compromise any or all Avoidance Actions subject to notice and a

hearing. Notice of any compromise need be provided only to those parties that have requested notice in the Bankruptcy Case. The following is added to the end of Section 9.1: If this case is converted to a Chapter 7, all property vested in the Debtor and acquired post-confirmation will re-vest in the Debtor and become property of the Chapter 7 estate.

## ARTICLE X
## EXECUTORY CONTRACTS

10.1 **Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases of Debtor shall be deemed assumed unless subject to a motion to reject filed on or before the Confirmation Date. For all contracts and unexpired leases assumed under this Section, Debtor shall pay all amounts owed under the contract or unexpired lease within thirty days after the Confirmation Date, except as set forth below.

## ARTICLE XII
## OBJECTIONS TO CLAIMS

11.1. **Timing of Objections:** Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) sixty days from the date of filing of any Proof of Claim or (b) three months after the Effective Date.

11.2 **Objections to Liens:** Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 11.1 or after any attempt by a Creditor to enforce the Lien.

12.3 **Claims Bar Date**: Except as provided herein or otherwise agreed in writing by Reorganized Debtor, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date (or, for a Claims Bar Date after the Effective Date, as of the applicable Claims Bar Date) without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order.

12.4 **Allowance of Clams – No Preclusion**: The allowance of any Claim, either after the Filing of an objection or as a result of no objection having been Filed, shall in no event create any estoppel argument against Reorganized Debtor or any other party, whether or not affiliated with Reorganized Debtor. This provision shall be given a broad interpretation and shall, without limitation, prohibit the use of any argument of res judicata, collateral estoppel, claim preclusion, issue preclusion, or judicial estoppel in the event of any current or future litigation between Reorganized Debtor, an Affiliate or Insider of Reorganized Debtor, or any other Person with the Clam Holder as a result of allowance of a Claim or the absence or resolution of any objection, with the sole exception that the allowance of the Claim sets the amount of the Claim as

against the Reorganized Debtor for purposes of this Plan and distributions under this Plan.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1 **Immediate Binding Effect**.  Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor, Reorganized Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

13.2 **Additional Documents**.  On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor, Reorganized Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3 **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Interests before the Effective Date.

13.4 **Successors and Assigns**. The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

13.5 **Service of Documents**.  After the Effective Date, any pleading, Notice, or other document required by the Plan to be served on or delivered to Debtor or Reorganized Debtor must be sent by overnight mail, postage prepaid to Debtor's counsel at the address set forth on the first page of this Plan **and** to:

Residents First, LLC
c/o Ara Darakjian
217 Pierce, Ste. 209
Birmingham, MI  48009

Notice to Holders of Claims may be made to the addresses as set forth in Section 6.2.

13.6 **Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.7 **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) nonseverable and mutually dependent.

13.8 **Limitations on Operations**.  If the Reorganized Debtor has made all payments and distributions required under this Plan, all restrictions, negative covenants, and other limitations on Debtor's operations provided herein or in the Confirmation Order will terminate.


Respectfully submitted,

HEILMAN LAW PLLC


 /s/ Ryan D. Heilman _____
Ryan D. Heilman (P63952)
Attorneys for Debtor
40900 Woodward Ave., Suite 111
Bloomfield Hills, MI 48304
(248) 835-4745
ryan@heilmanlaw.com

Dated: February 6, 2024