UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case Number: 23-49817-mar

**Residents First, LLC**  Chapter 11 – Subchapter V

    Debtor.  Hon. Mark A. Randon
_____/

# UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

Andrew R. Vara, United States Trustee, states as follows:

This Debtor is not reorganizing its operations. Instead, it has structured its Amended Plan to provide releases to its affiliates and their subsidiaries. The Debtor's Amended Plan attempts to extract non-consensual third-party releases, for little or no consideration, for a multitude of unidentified non-debtor parties merely because they are connected with or related to the Debtor. The Amended Plan was filed to benefit the Debtor's affiliates and subsidiaries, not as a good faith effort to reorganize. The Amended Plan should not be confirmed.

**Background**

1. The Debtor filed this Chapter 11 case on November 8, 2023.

2. The Debtor is a single member LLC that manages six mobile home communities. All six mobile home communities are owned by Founding Partners LLC (Founding Partners).

3. The Debtor's sole member, Ara Darakjian, is also a member of Founding Partners.

4. The Debtor scheduled $601,452.31 in unsecured debt. The majority of the debt, $478,864.90, is owed to Champion Home Builders.

5. According to the Monthly Operating Reports, the Debtor's total net income since filing is $781.00 (Docket Nos. 57, 65, 75, and 85).

6. Despite reporting a small positive "net income" since case filing, the Debtor's loan balance has increased from $366,537.61 in November (Docket No. 57) to $586,243.52 in February (Docket No. 85). The Debtor has incurred a significant amount of post-petition debt. Thus, the Debtor appears to be operating at a substantial loss.

**The Amended Plan and the Support Agreement**

7. The Debtor filed an Amended Plan of Reorganization on March 7, 2024 (Docket No. 73).

8. The Debtor's Amended Plan references a plan Support Agreement between the Debtor and Founding Partners. The Support Agreement is not filed with

the Court. The Support Agreement modifies the management agreement that has been in place between the Debtor and Founding Partners since 2022.

9. According to the Amended Plan, the Support Agreement will (i) ensure the Debtor has enough money to operate, (ii) pay all the Debtor's secured obligations as provided for under this Plan, (iii) pay lease obligations as they come due in the ordinary course of Debtor's business, (iv) pay all professional fees and Administrative Claims incurred by the Debtor's estate and Allowed in this Chapter 11 Case, and (vi) make a minimum distribution to General Unsecured Creditors of no less than $15,000.00 per year during the Plan Term, for total distributions to General Unsecured Creditors of $45,000.00.

10. Under the Support Agreement, Founding Partners has agreed to fund the Debtor's Plan and its ongoing operations to the extent necessary to fulfill the plan provisions. Nothing in the Support Agreement is designed to turn the Debtor into a viable business.

11. According to the Amended Plan, the Support Agreement can be terminated at any time by Founding Partners for cause.

12. The Support Agreement defines cause as:

(i) a change in control of Debtor through which Mr. Darakjian is no longer in control of Debtor's day-to-day operations, and (ii) any lawsuit or similar proceeding by the Debtor, on behalf of the Debtor, whether derivatively or otherwise, or resulting from an assignment of claims from Debtor, against Founding Partners or any of Founding Partners' subsidiaries or affiliates. If the Property Management Agreement is terminated for

cause, the Support Agreement shall also be automatically terminated and Founding Partners will have no further obligations to make payments under the Support Agreement.

13. If the Support Agreement is terminated Founding Partners does not have any obligation to support the Debtor and the Debtor will liquidate its assets.

14. The liquidation analysis indicates creditors will receive nothing.

### *The Amended Plan's Third-Party Release Provisions*

15. The Amended Plan includes impermissible releases from liability, for unidentified claims and causes of action, for the benefit of unnamed third parties.

16. The Section 5.4 of the Amended Plan includes the following third-party release:

> **Related Party Actions.** If the Plan is not confirmed under § 1191(a), the Subchapter V Trustee or any other party-in-interest may request that the Court authorize the Subchapter V Trustee or another Person to be appointed by the Court to review potential Related Party Actions and bring such Related Party Actions if such Person deems that to be appropriate in the totality of the circumstances. Any Related Party Action must be commenced no later than six months after the Confirmation Date, and any Related Party Action not timely commenced will be forever and irrevocably waived and released. If a Related Party Action is commenced, Founding Partners may terminate all its obligations under the Property Management Agreement and the Plan Support Agreement.

17. Related Parties is broadly defined as, "all Affiliates and Insiders of Debtor, which includes Founding Partners, the FP Affiliates, Mr. Darakjian and his relatives, and all entities owned or controlled by Mr. Darakjian or his relatives." (*Amended Plan, Page 11*).

18. The Related Parties are not otherwise identified.

19. The Amended Plan may be confirmed consensually under § 1191(a). In that instance, even those creditors that voted against the Amended Plan will have waived claims against non-debtor entities without their consent. (*Amended Plan, Page 2*).

20. If confirmation occurs under § 1191(b), claims against non-debtor third parties are not waived, but if any action is taken against Founding Partners LLC, its affiliates or subsidiaries, the Support Agreement will be terminated, and no payments to creditors will be made. (*Amended Plan, Page 2*).

21. Also, if the Amended Plan is confirmed under § 1191(b), there are severe limitations placed on when a Related Party action can be brought. (*Amended Plan, Section 5.4*).

22. Related Party Action is broadly defined as "any lawsuit or similar action commenced against any of the Related Parties by Debtor or by any Person acting through or on behalf of Debtor, including any derivative action." (*Amended Plan, Page 12*).

### *The Debtor's Releases*

23. The Amended Plan makes it clear that the Debtor is waiving all actions against any Related Parties. It states:

> If the Plan is confirmed on a consensual basis, Debtor will waive and release all claims and potential claims against Founding Partners, its subsidiaries and

affiliates (collectively, "FP Affiliates"), as well as all affiliates and insiders of Debtor, as those terms are used in 11 U.S.C. §§ 101(2) and (31), including Mr. Darakjian, his relatives, and all entities owned or controlled by Mr. Darakjian or his relatives (the "Related Parties"). (Due to the interrelationship between Debtor and Founding Partners, all or essentially all affiliates of Debtor are also affiliates of Founding Partners.)

(*Amended Plan, Page 2*)

24. The Founding Partners subsidiaries and affiliates are not identified in the Amended Plan.

25. The Amended Plan does not disclose any claim the Debtor may have against Founding Partners LLC or its affiliates or subsidiaries. It also does not assert that no claims exist against Founding Partners LLC or its affiliates or subsidiaries.

**The Amended Plan Cannot be Confirmed**

*The Amended Plan Impermissibly Releases Non-Debtor Third Parties*

26. Under the terms of the Amended Plan, if the Amended Plan is confirmed under 1191(a), all creditor claims against the Related Partes are waived and released. If the Amended Plan is confirmed under 1191(b), Founding Partners LLC will terminate its support, and parties have a short time frame to bring all claims against all Related Parties. In other words, under any scenario, if the Amended Plan is confirmed, any and all claims against everyone, known or unknown, are waived.

27. For a plan to be confirmed it must comply with the applicable provisions of the Bankruptcy Code. *11 U.S.C §§ 1129(a)(1) and 1191(a)*.

6

23-49817-mar    Doc 97    Filed 04/10/24    Entered 04/10/24 10:00:02    Page 6 of 13

28. The Amended Plan proposes to extinguish claims of third parties against non-debtor entities, contrary to 11 U.S.C. §524(e), which provides:

> Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

29. In the Sixth Circuit, this is only allowable in unusual circumstances where the Debtor has met the following seven factors:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*In re Dow Corning Corp.,* 280 F.3d 648, 658 (6th Cir. 2002).

30. The Debtor has not satisfied the *Dow* factors to establish that third-party releases are appropriate in this case.

31. The Amended Plan violates 11 U.S.C §§ 1129(a)(1) and 1191(a) because it proposes to extinguish claims of non-consenting creditors against a non-debtor without meeting its burden to establish it is necessary in this case. *In re Dow Corning Corp.,* 280 F.3d at 658.

32. Creditors cannot properly evaluate the Amended Plan, including the release of non-debtor third parties, because those parties have not been identified.

33. Since the Debtor cannot impose non-consensual releases on the creditors, it would need to get consent. That means the only way the Amended Plan can be confirmed is if every creditor voted in favor of the plan.

### *The Amended Plan Has Been Proposed in Bad Faith*

34. For a plan to be confirmed it must be proposed in good faith. 11 U.S.C §§ 1129(a)(3) and 1191(a).

35. This Plan was proposed in bad faith and therefore it cannot be confirmed.

**The Amended Plan's Promises to Pay are Illusory**

36. The Amended Plan does not provide any real benefit to creditors.

37. The proposed terms of the Amended Plan provide for minimal payments from a third party that can terminate its support of the Debtor, at any time for any reason; and this payment is only available if claims against unnamed third parties are waived. (*Amended Plan, Page 2*).

38. If the creditors do not agree to waive unidentified claims against unidentified parties, the Debtor will not make any payments to the creditors, and their rights to pursue the Related Parties are still significantly limited. (*Amended Plan, Page 2 and Section 5.4*).

39. Founding Partners, not the Debtor, is controlling the bankruptcy proceedings.

**The Bankruptcy is for the Benefit of Insiders**

40. The Debtor is releasing claims against the Related Parties.

41. The beneficiary of these releases, given for little or no consideration, are insiders of the Debtor.

42. A release would only be necessary if claims exist against the Related Parties.

43. The Debtor has not identified any of the claims against any of the Related Parties.

44. If the Amended Plan is confirmed, Founding Partners, and the Related Parties would essentially be receiving a bankruptcy discharge.

45. Nothing in the plan leads to the long-term viability of the Debtor.

**The Meaning of Good Faith**

46. Good faith is not defined by the bankruptcy code. Generally, courts have said that good faith means there must be a reasonable likelihood that that the plan will achieve a result consistent with the objectives of the Bankruptcy Code. *See*, *In re Waterford Hotel, Inc.,* (Bankr. E.D. Mich. 2013), citing *Trenton Ridge Investors*, 461 B.R. at 468 (quoting, in part, *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir.1984)). "'Two primary purposes of chapter 11 relief are the

preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims.'" *Id.* at 469 (quoting *Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner)*, 490 F.3d 21, 25 (1st Cir. 2007), [**28] and citing *Bonner Mall P'ship v. U.S. Bancorp Mortg. Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 916 (9th Cir. 1993)). In making the good faith determination, courts examine the "totality of the circumstances." *Id.* at 468-69.

47. The Court in *In re Oakland Physicians Med. Ctr., L.L.C.,* 2016 Bankr. WL 424810 (Bankr. E.D. Mich. 2016), quoting *In re Gregory Boat Co.*, 144 B.R. 361, 366 (Bankr. E.D. Mich. 1992), said, "Good faith also generally requires that the plan be proposed 'with honesty and good intentions, and with a basis for expecting that a reorganization can be effected,' and that the plan proponent deal with its creditors in a manner that is fundamentally fair." (citations omitted).

48. The Sixth Circuit Court of Appeals has held that the determination of whether a plan is proposed in good faith "expressly requires an inquiry into the Debtor's motives in proposing the Plan." *In re Lapeer Aviation, Inc.*, 2022 WL 7204871 (Bankr. E. D. Mich. Oct. 12, 2022) (Applebaum, J.) (citing *In re Murray Metallurgical Coal Holdings, LLC,* 623 B.R. 444, 518 (Bankr. S.D. Ohio 2021) citing *Village Green I, GP v. Fed. Nat'l Mortg. Ass'n (In re Village Green I, GP)*, 811 F.3d 816, 819 (6th Cir. 2016)).

49. The purpose of this Chapter 11 case is to benefit the Related Parties, not to preserve an ongoing business or to maximize the assets to be distributed to unsecured creditors.

**The Debtor is Not Entitled to a Discharge**

50. Subchapter V contemplates that a debtor will be (1) reorganizing and (2) making payments for a minimum of three years.

51. A Subchapter V debtor is entitled to a discharge, when it confirms a plan non-consensually after making three to five years of payments due under the plan. 11 U.S.C §§ 1181(c), 1191(b), and 1192.

52. Section 1192 contemplates that, in order to obtain a discharge, a Subchapter V debtor will make years of payments to creditors under the terms of a plan before a discharge enters. This makes sense in the context of a non-consensual plan.

53. In this case it is unlikely the Amended Plan will be confirmed under § 1191(a). If the Amended Plan is confirmed it will have to be confirmed under § 1191(b).

54. If the Amended Plan is confirmed under § 1191(b), the Debtor is essentially closing its doors – it has nothing to liquidate to repay unsecured creditors, it is not making any payments to unsecured creditors, or reorganizing. It would be

an absurd result, and fundamentally unfair to creditors, to allow a Debtor to receive a discharge under these circumstances.

55. That is particularly true in this case because it is clear the bankruptcy was filed to protect the interest of the Related Parties, and under the terms of the Plan, those parties would essentially be receiving a discharge.

**WHEREFORE,** the United States Trustee requests that confirmation of the Debtor's Subchapter V Plan of Reorganization be denied.

        Respectfully submitted,

        **ANDREW R. VARA**
        **UNITED STATES TRUSTEE**
        Regions 3 and 9

By: /s/ Kelley Callard
     Trial Attorney
     Office of the U.S. Trustee
     211 West Fort St - Suite 700
     Detroit, Michigan 48226
     (313) 226-6773
     Kelley.Callard@usdoj.gov
     [P68537]

Dated: April 10, 2024

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case Number: 23-49817-mar

**Residents First, LLC**  Chapter 11 – Subchapter V

Debtor.  Hon. Mark A. Randon
_____/

### CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, I served copies as follows:

1. Documents Served:   *Objection To Confirmation of the Plan* and *Certificate of Service.*

2. Served Upon:   **Residents First, LLC**
   217 Pierce, Ste. 209
   Birmingham, MI 48009

3. Method of Service:

   First Class Mail

   **ANDREW R. VARA**
   **UNITED STATES TRUSTEE**
   Regions 3 and 9

   By: /s/ Edward Dorda
   Paralegal
   Office of the U.S. Trustee
   211 West Fort St - Suite 700
   Detroit, Michigan 48226
   (313) 226-4531
   Edward.M.Dorda@usdoj.gov

Dated:  April 10, 2024