**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:                                            Case No. 23-49817-mar

RESIDENTS FIRST LLC

                                                  Chapter 11, Subchapter V

                        Debtor.                   Hon. Mark A. Randon

_____/


## SUB CHAPTER V TRUSTEE'S REPORT


### TRUSTEE APPOINTMENT AND SCOPE OF DUTIES

The above captioned proceedings of Residents First LLC (referred to herein

as the "Debtor" or "Residents First") were commenced by the filing of a voluntary

Chapter 11 petition with an election for Sub Chapter V status on November 8,

2023 [dkt # 1]. On November 9, 2023, I was appointed the Sub Chapter V Trustee

[dkt #9] and my duties were expanded on December 18, 2023 [dkt#50] ("Expanded

Duties Order") to include the duties under 11 U.S.C. 1106(d) (3) and (4).

Pursuant to 11 USC 1106:

            (3) except to the extent the court orders otherwise, investigate the acts,

conduct, assets, liabilities, and financial condition of the debtor, the operation of

the debtor's business and the desirability of the continuance of such business, and

any other matter relevant to the case or to formulation of a plan;

> (4) as soon as practicable

> > (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

> > (B) transmit a copy or a summary of any such statement to any creditor's committee, or equity security holders' committee, and to any indenture trustee, and to such other entity as the court designates;

## INVESTIGATION AND DOCUMENTS REVIEWED

Pursuant to the Expanded Duties Order, the Debtor was required to commence

production on January 8, 2024. On that date, the Debtor provided access to a

Dropbox containing the documents produced pursuant to the order. The Expanded

Duties Order required the Debtor to produce the following documents:

1.    The Debtor shall produce the following documents to counsel for the

Sub V Trustee, CHB, the UST and the SBA, on or prior to January 8, 2023:

a. A summary of all benefits paid to Mr. Darakjian, and the dollar amount of each, per month, for 2023 and annually for the years 2021 and 2022; also, whether the benefit covers members of Mr. Darakjian's family. Produced
b. A listing of all personal expenses of Mr. Darakjian, the senior vice-president and/or any family member paid by the Debtor over the last 3 years. Produced
c. Documents supporting the inability of the Debtor, Founding Partners, LLC ("FP") or Reliance Home Services, LLC, to obtain a certificate of

occupancy, HUD approval or other regulatory or licensing approval for the use the units installed or improved by CHB which are the subject of the CHB state court litigation. *Produced*

d. All other documents related to the inability of the Debtor to invoice FP for work provided by CHB which was the subject of the CHB state court litigation. *Produced*

e. All credit card bills of the Debtor for the previous 3 years, including those of Capital One, Home Depot and any others previously or currently being utilized. *Produced November 2021-December 2023*

f. A listing of all payments made by the Debtor during the preceding one-year period to anyone. *No one document was produced, Debtor produced bank statement and credit card statements*

g. Copies of all invoices rendered to FP by the Debtor during the preceding 3 years. *None*

h. A summary, by month, of all "Management Fees" (as defined in the Property Management Agreement between Debtor and FP ("the "Management Agreement") received by the Debtor during the current year and annually for the years 2021 and 2022. *Produced 2022 and 2023*

i. A summary, by month, of all "Fees" (as defined in the Management Agreement) received by the Debtor during the current year and annually for 2021 and 2022. *Produced 2022 and 2023*

j. All bank statements of the Debtor for the preceding 3 years.

k. All "Budgets" prepared by the Debtor, as that term is defined in the Management Agreement, for the last 3 years. *None*

l. All "Capital Expense Schedules" prepared by the Debtor, as that term is defined in the Management Agreement, for the last 3 years. *None*

m. All records of any demands or claims for indemnification made by the Debtor to FP during the last 3 years, under Section 5.02 of the Management Agreement. *None*

n. All records of any distributions paid by Debtor to, or to a person or entity on behalf of, Mr. Darakjian under the Operating Agreement of Debtor, during the last 3 years. *None*

o. All transfers of any nature whatsoever to any affiliate of the Debtor during the last 3 years, including, but not limited to, TIG Equities, LLC and TIG Capital, LLC. *Produced bank statement and credit cards in follow up requests Debtor produced spreadsheets of some transactions*

p. All K-1's issued by the Debtor to all members, for the last 3 years. *None*

q. All director and officer liability policies of the Debtor. *None*

3

r.  Copies of all reports prepared by the Debtor per Section 2.03 of the Management Agreement, for the last 3 years. *None*

s.  All costs reimbursed to Debtor by FP pursuant to Section 2.03 of the Management Agreement, during the last 3 years. *None*

t.  Copies of all agreements and service contracts entered into on behalf of FP, during the last 3 years, in the Debtor's capacity as agent to FP. *None other than Champion Home Builders*

u.  Records related to project coordination services provided by the Debtor to FP during the last 3 years, related to capital improvements and tenant alterations and improvements, as set forth in Section 3.01 of the Management Agreement. *None*

v.  All federal and state tax returns from which the results of the Debtor's operations are reflected, for the last 3 years. *Schedule C's produced for 2020, 2021 and 2022.*

w.  All documents of Debtor related to the acquisition by Reliance Homes Services of any mobile home, which was installed and or serviced, directly or indirectly by the Debtor, including, but not limited to, mobile homes which were the subject of the CHB state court litigation *None*

In furtherance of the investigation, the Sub V Trustee requested additional documents, met in person with Ara Darakjian and Ryan Heilman on two occasions, conducted several conference calls and exchanged information and documents via email. The Trustee found the Debtors representatives to be cooperative throughout this investigation. Ara Darakjian is the person designated by the Debtor to carry out the duties of the Debtor in Possession in this bankruptcy. He is also the sole member of the LLC which holds the membership interest of the Debtor. Effectively, he is the person who implements the organization's purpose and provides overall direction. He hires, fires and manages all employees of the company and ensures they are carrying out the daily operations of the company.

4

The Trustee attended the 2004 Examination of Ara Darakjian in February 2024 and conducted her own 2004 exam of Ara Darakjian in March of 2024. A short follow up examination was conducted on April 19th, 2024.

It is important to note at the outset that the Debtor admits that its books and records are not well kept. The Trustee found that the Debtor was unable to produce spreadsheets that should normally be accessible.  For example, the Debtor was unable to produce a check register ledger and was unable to produce a general ledger until 18 days ago. Furthermore, the Debtor did not finalize its 2022 financials to provide a Schedule C profit and Loss Statement to Ara Darakjian until January of 2024. The Debtor stated that it's accounting department (four people) save one person were all terminated or resigned by August of 2023 and that following the departures the Residents First determined that the books and records of the Debtor were not kept in the manner Ara Darakjian intended.  During this investigation the Trustee asked questions or raised issues only to find out that Mr. Darakjian did not know the answers, nor did he know why the transactions were documented the way they were.

A review of the general ledger only recently produced indicates that some of the journal entry descriptions are not descriptive enough to understand the transactions. Further, the Debtor indicated that it does not have confidence in the 2021 and 2022 financials but made the decision to only clean up the 2023 financials.

5

I have reviewed the documents produced to date; the actual 2023 financials are not yet available for review. In further support of the unreliability of the Debtors book and records the debtor e stated on April 19, 2023 that the financial statements contained in the Monthly Operating Reports at November 30, 2023 (dkt# 57), December 31, 2023 (dkt# 65), January 31, 2024 (dkt# 75) and February 29, 2024 (dkt# 85) are all in the process of being restated.

The Sub Chapter V trustee focused her investigation on the following areas insider transactions between Debtor and Ara Darakjian, between the Debtor and family members of Ara Darakjian and between the Debtor and related companies, use of SBA loan, potential causes of action, the indemnification provision of the agreement and the financial viability/feasibility of a plan. Each of these areas of investigation are addressed below.

## ENTITIES RELATED TO DEBTOR

The list of names of the entities that are insiders and related to the Debtor are listed below to assist in the overall understanding of the Debtor's business and all of the inter- company transactions.

The names of the manufactured housing communities (the "Communities") that the Debtor manages are listed below:

Twin Pines Estates LLC

Tallmadge Meadows LLC
Keego Harbor LLC
Kingsbrook Estates LLC
Crystal Downs LLC
Residences at Cass Lake

The other entities related to the operation of the Debtors business are listed below:

Founding Partners LLC owns the Communities and is owned by the Trusts of Ara Darakjian and other family member trusts.

RIG owns homes in the Communities and is owned by TIR Equities

RHS owns homes in the Communities and is by TIR Equities

TIR Equities LLC is owned one hundred percent by Ara Darakjian

TIR Capital LLC is owned one hundred percent by Ara Darakjian

Reliance Management Assoc is owned one hundred percent by Ara Darakjian

Residential Construction Group ("RCG") is owned by Ara Darakjian but did not and does not operate

Darakjian Jewelers Inc owned by family members and their trusts but not Ara Darakjian or his trust

All other the entities list above are referred to herein as "Related Entities".

Residents First together with all of the listed Related Entities above are referred to

as the "Family Enterprise".


## GENERAL BACKGROUND AND BUSINESS MODEL OF DEBTOR

On March 17, 2010 Reliance Management Associates, LLC filed its

Domestic Limited Liability Company documents in the State of Michigan. On

January 1, 2021 it changes its name to Residents First, LLC. ("Residents First" or "Debtor"). The Debtor manages six separate manufactured mobile housing communities. Each of the Communities (the real property) is owned by Founding Partners LLC. The homes in the communities are owned by RHS or RIG and rented to the Communities to rent by the Communities to residents. The Communities pay the Debtor to manage them pursuant to the Property Management Agreement ("Management Agreement"), entered into by the Debtor and Founding Partners LLC, *See* Exhibit 1. The Debtor does not provide property management for any entity other that Founding Partners.

Pursuant to the Agreement the Debtor provides "on-site" staff and "back office" accounting services. Specifically, the Debtor handles the accounting for, all leasing, rent collection, maintenance, landscaping, utilities, customers relations and all other aspects relating to the maintenance and management of the communities. To carry out these obligations the Debtor employs ten employees, eight salaried employees, including Ara Darakjian and two hourly employees.

The Debtor was formed by Ara Darakjian as a breakeven entity, meaning by design, starting in 2010, its role in the Family Enterprise is to charge/invoice the Communities sufficient fees to cover its expenses and nothing more, a net zero LLC. Accordingly, the monthly management fees and monthly asset management fees ("Management Fees") charged together with the reimbursed payroll and

expenses should be sufficient to cover all of residents First expenses and not a dollar more as to intentionally not make a profit.

The employees who work at the Communities (six of the ten current employees) are reimbursed as a line-item expense and their salary is reimbursed 100% by the Communities together with any additional expenses paid by Residents First on behalf of the Communities. The Communities are billed and reimbursed monthly for these expenses. The Management Fees and reimbursements are listed as income on the Debtor Profit and Loss Statement. For an example, *see* Exhibit 2.

The payroll of Ara Darakjian, Scott Pistorius (VP, provides Community management and operations support for Residents First), Denise Gastelum (provides accounting for Residents First) and Gerald Runnels (provides oversight of Community Assets for Residents First) is paid by Residents First from the Management Fees paid by the Communities and not reimbursed as a payroll expense.

As stated above, Management Fees are designed to cover all of the remaining expenses of the Residents First. However, they rarely cover the remaining expenses of the Residents First. To maintain its business operations, Residents First either borrows from any one of the Related Entities that has surplus cash in its bank account or it borrows from the working capital loan of TIR Capital at Merrill Lynch. Examples of the borrowing are as follows, on January 20, 2023

9

one of the Communities transferred $3000.00 in addition to its monthly obligations. On September 29, 2023 TIR Capital transferred $14,800.00 from its Merrill Lynch Working Capital Loan Account ("LMA") to cover the shortfall of income to pay expenses. October 25, 2023 Darakjian Jewelers transferred $37,651.00 to allow the Debtor to meet payroll and other obligations. And on October 30, 2023 Darakjian Jewelers transferred in $16,768 so the Debtor could in turn wire transfer out the retention payment for this bankruptcy filing.

The Family Enterprise banks at Merrill Lynch and Residents First does the accounting for the Family Enterprise (except that sometime in late 2022 or early 2023 it stopped doing certain accounting for Darakjian Jewelers). The funds were transferred to and from various accounts via on-line transfers of funds by the Residents First accounting staff with little or no formalities.

## TRANSACTIONS BETWEEN DEBTOR AND RELATED ENTITIES

As mentioned above the Debtor did not follow any formal process or procedure when it came to transfers within the Family Enterprise. Transfers were regularly made into and at times out of the Merrill Lynch account of Residents First ("ML Account") without descriptive accounting or loan documents.

The Debtors accounting makes it difficult to confirm which transfers of funds from the Communities are payments pursuant to the Management Agreement and which are loans. The Debtor also received transfers from TIR

Equities, TIR Capital, and RHS to cover its monthly shortfalls of income to cover expenses. Simply put, if the Debtor needed money a Related Entity would transfer it.

The Debtor is unable to produce an intercompany ledger to evidence all of the transfers from entities in the Family Enterprise to or from the Debtor. The Debtor has prepared and produced a spreadsheet statement of transfers. What is clear when reviewing this statement is that the Debtor received from the Related Entities an amount substantially in excess of any amounts transferred out to them. According to the Debtors spreadsheets in the three years prior to the bankruptcy filing the Related Entities transferred $536,673.81 to the Debtor and the Debtor transferred out to them $118,519.12. Note these totals do not include the journal entries between the Debtor and Darakjian Jeweler in the amount of $340,127.78 because there is not a transfer in or out the Debtor's bank account on March 6, 2023.

And while the transfers from TIR equities and TIR Capital were listed on the Debtors statements of intercompany transactions the Trustee was advised that the transferers between the Debtor and RHS were not identified in the search and therefore not included. The Trustee prepared the list of transfers to from and to RHS and RIG from the bank statements. *See* Exhibit 3 for the list of the transactions in the years 2021- 2023 between Debtor and the Communities, TIR

Equities and TIR Capital. *See* infra page ___ for the transactions between the Debtor and RHS and RIG. *See* Exhibit 4 for the list of the transactions in the year 2021-2013 between the Debtor and Darakjian Jewelers.

Even the spreadsheets prepared by the Debtor are somewhat unreliable; the spreadsheet of transactions between Residents First and Darakjian Jewelers is missing at least ten transfers from Darakjian Jewelers into the Residents First ML Account. It does not appear to be missing any transfers out of the ML Account to Darakjian Jewelers.

## **MEMBER/ INDIVIDUAL INSIDER TRANSACTIONS**

### **Ara Darakjian**

Ara Darakjian receives the following benefits from the Debtor, salary, family medical insurance, an insured vehicle, and a cell phone. A summary of the details follows:

Payroll: Pursuant to Debtors statements in connection with the cash collateral hearing and final order. Ara Darakjian's stated salary is 214,500.00 per year. In 2022 his salary was 214,887.00 and in 2023 he took a reduced salary of 191,875.00.

Health Care: He receives BCBS of Michigan medical coverage for himself and his family.

Vehicle: Residents First leases a vehicle for Ara Darakjian to use. From January of 2021 to January of 2023 the vehicle expense was $ 568.63 and in January of 2023, Residents First made a down payment of 5,128.68 and monthly lease payments of $2,378.47. The monthly lease payments were made from the bank account of TIR Equities and then reclassified as a loan from TIR Equities to Residents First. Residents First did make the November 2023 payment in the amount of 2,378.47 from its bank account. *See* Exhibit 5 for the details of the accounting and lease payments. Post-petition the Debtor is not making the monthly payment from its bank account, however, I assume the reclassification is still happening because Residents First is on the lease.

Cell Phone: Residents First provides a cell phone for many of its employees including Ara Darakjian.

## SBA LOANS and USES

The First SBA loan of 43,900.00 was deposited in the Debtor's ML bank account on June 18, 2020 and immediately thereafter on June 19, 2020 Residents First transferred $20,940.71 to TIR Capital and $22,959.39 to Darakjian Jewelers. The second SBA -EIDL loan of 54,000.00 was deposited on July 20, 2021 into the same ML account and immediately thereafter on July 21, 2021 Residents First transferred 10,000.00 to one of the Communities (Tallmadge Meadows) and paid down the Capital One Credit Card Statement. It is not possible to determine at this

time if Residents First owed $24,000 or if the payment was made on behalf of one of the Related Entities.

## CAPITAL ONE CREDIT CARD AND CHARGES

Capital One is listed as a creditor and has filed a proof of claim in the amount of $70,849.47. According to Ara Darakjian, there was one Capital One Credit Card Account and it was in the name of Residents First. The statements are titled in the name of Resident's First and mailed to the address of Residents First. There are a number of credit cards associated with the account. All of the Related Entities listed above (except for Darakjian Jewelers) had a card. Additionally, there was a card in the name of all of the individuals who worked in the office and the regional managers who supervised one or more of the Communities.

Ara Darakjian testified that the monthly statement is reviewed by residents First accounting staff and that each entity pays its own charges. To further complicate the accounting and he Trustee's verification the Residents First office staff would use any card they had handy to make a payment and adjust the journal entry in the general ledger to reflect the correct entity. For example, Ara Darakjian had a card in his name (which he personally never used) the office staff used his card to pay for services that were associated with a Community. Examples of this are charges on his card for disposal services, landscaping and internet for a

14

Community. Based on the Debtors records this is not possible to verify if the Debtor always followed this process, however, I can verify that it is more likely than not. In reviewing the bank statements, it is clear that the Debtor did not make payments every month to Capital One so the payments had to come from other sources. *See* Exhibit 6 as an example, eight payments were made on the Capital One statement balance August 24, 2023-September 22, 2023 none of which came from the Residents First ML Account.

## PROPERTY MANAGEMENT AGREEMENT and INDEMNIFICATION

Based on a review of the Debtor's books and records produced it appears that the Debtor has sought reimbursement for every expense of Residents First in excess of the Management Fees and Asset Management Fee except for the judgment of Champion Home Builders ("CHB"). The opinion of Ara Darakjian is that his interpretation of the Management Agreement gives him discretion as to which expenses of Residents First he seeks reimbursement for under the Management Agreement. His position is that he determined the work was not finished or completed in accordance with the contract between CHB and Residents First and the costs to complete the work exceeded the amount of the judgment and therefore he will not seek reimbursement or indemnification from Founding Partners LLC for the expense. Conversely, CHB claims there is no discretion and

15

that Ara Darakjian has breached his fiduciary duty to creditors by failing to make a claim for reimbursement or indemnification under the Management Agreement. At this time, it is the Trustees view that the language of the Management Agreement will need to be litigated.

It should be noted that the Debtors books and records do not list an account payable although AR Landscape filed two claims, numbers 11-1 and 12-1 in the total amount of $315,886.50. A review of the invoices shows that the work was done in the name of and on behalf of the Communities. The same is true for True North Asphalt which filed claim 15-1 in the amount of $152,170.84. The invoices of both creditors appear to be in the name of the Communities and not in the name of Residents First, however, Residents First was named as a defendant in both lawsuits.

## VEHICLES

The Debtor owns one and leases all of the other vehicles used by Residents First and those used by the Communities. *See* Exhibit 7 for a list of the vehicles and payments over the three years prior to filing. The Debtor advised the trustee that it makes the monthly payment for the Ram pickup truck it purchased and for any vehicle not being used by a Community. If a vehicle is assigned to and used by

16

a Community, the Community will make the payment directly to the lessor. The Debtor maintains insurance on all of the vehicles.

## POTENTIAL CAUSES OF ACTION

My review of the document production and the 2004 Examinations of the Debtor reveal the following potential causes of action:

**Potential Insider Preferences or fraudulent transfers**

The following insider transactions maybe be recoverable under sections 547 or 548 of the Bankruptcy Code:

Ara Darakjian

Capital One Charges: Ara Darakjian reviewed the Capital One statements produced to the Trustee and determined that the amount of $9,467.14 were for personal expenses. Those funds were not reimbursed to the Debtor. The charges are listed on Exhibit 8.

Armen Darakjian

Residents First made all of the monthly cell phone payments for Armen Darakjian. Armen is the brother of Ara Darakjian and not an employee of Residents First. In the 3 years prior to the filing in the approximate amount of $3,600.00. Although some of the invoices are missing from the schedule, Ara

Darakjian testified that believed the Debtor made all of the monthly payments in the prior three years whether or not he could locate an invoice.

Mrs. Darakjian

In the 3 years prior to the filing Residents First made all ATT monthly cell phone payments for Mrs. Bergy Darakjian. Bergy Darakjian is the mother of Ara Darakjian and not an employee of Residents First. The approximate amount of the payments made on her behalf and not reimbursed are $2,250.00.

Both Armen and Bergy Darakjian have most likely been on the Debtors cell phone plan since its inception Accordingly, additional years of phone payments and three vehicle payments in the total amount of $1,695.00 on behalf of Armen Darakjian be recoverable pursuant to section 544 of the Bankruptcy Code under the Michigan Uniform Voidable Transactions Act at M.C.L. §566.31 *et seq* which has a six-year statute of limitations.

## **Potential Non-insider preferences**

Attached as Exhibit 9 is a schedule (prepared by the Debtor) of payments made within the 90 days prior to filing. Bases on my review of the schedule and knowledge of the vendors most of the payments were paid within 30 days of the invoice date and are regular monthly payments. The exception are the following payments which may be recoverable under section 547 of the Bankruptcy Code:

Koren Riley:  date cleared10/10/23        $21,000.00

|                   |              | date cleared | 10/24/23 | $11,400.00 |
|-------------------|--------------|--------------|----------|------------|
| Capital One:      | date cleared | 10/17/23     | $5,000.00 |            |
|                   |              | 10/19/23     | $1,100.00 |            |
| Oris ASO:         | date cleared | 10/16/23     | <u>$6,500.00</u> |     |
|                   |              |              | Total:   | $43,900.00 |

### **Potential Insider Related Entities Preferences or Fraudulent Transfers with one year**

The books and records of the Debtor indicate the following transfers out of Residents First to Related Entities. These transfers are potentially recoverable under sections 547 and 548 of the Bankruptcy Code:

| Kingsbrooke (FP)       | 3-28-23  | $120.14    |
|------------------------|----------|------------|
| TIR Capital            | 5-3-23   | $70,000.00 |
| Talmadge Meadows (FP)  | 6-26-23  | $12,871.57 |
| Crystal Downs (FP)     | 6-26-23  | $184.74    |
| Crystal Downs (FP)     | 6-26-23  | $106.71    |
| TIR Capital            | 7-24-23  | $800.00    |
| TIR Capital            | 10-14-23 | $ 400.00   |
| RHS                    | 10-16-23 | $300.00    |
| Crystal Downs (FP)     | 10-17-23 | $800.00    |
| Tallmadge Meadows (FP) | 10-17-13 | $1,100.00  |

19

| | | |
|---|---|---|
| Twin Pines (FP) | 10-18-23 | $680.00 |
| RHS | 11-03-23 | $3,000.00 |
| | Total: | $90,363.16 |

**Potential Insider Fraudulent Transfers in the second-year prior**

These are the only additional transfers out of Residents First to the Related Entities potentially recoverable under section 548 of the Bankruptcy Code:

| | | |
|---|---|---|
| RHS | 1-21-22 | $17,742.25 |
| RCG | 10-18-22 | $3,000.00 |
| | Total: | $20,742.25 |

**Potential Transfers pursuant to Section 544 of the Bankruptcy Code**

The Trustee is still reviewing the ML Account statements for the period January 1, 2020 -December 31, 2020 that were provided last Friday. A quick review shows transfers to TIR Capital and Darakjian Jewelers in the total amount of 43,900.10 that may be recoverable pursuant to section 544 of the Bankruptcy Code under the Michigan Uniform Voidable Transactions Act at M.C.L. §566.31 *et seq.*

20

## Fraudulent Transfers or Accounts Receivable -Reynolds Entertainment

Ara Darakjian or one of the TIR entities has an interest in a Reynolds Entertainment ("Reynolds") and an unrelated entity to the Family Enterprise. This entity made charges on the Residents First Capital One account and did not reimburse the Debtor. The charges are listed on the statements under Reynolds Entertainment and George Gibson and total $4,591.06. Ara Darakjian testified that this receivable is not collectable at this time.

## Potential Fraudulent Transfer and Account Receivables Collection Darakjian Jewelers

The trustee's investigation to date indicates that Residents First from at least 1/15/2021 invoiced collected $879.87 twice a month and then stopped invoicing and collecting from December 1, 2022 through present. Ara Darakjian testified that "I don't know why they stopped. They shouldn't have, but they did" March trans 46. lines 15-16. The Debtor has a potential cause of action against Darakjian Jewelers for December 2022- March 2024. The total account receivable to date would be $28,155.84 calculated as follows: 16 months - 2 payments of 879.87 per month. *See* Exhibit 4

Additionally, page 185 of the general ledger shows a journal entry to write off of an uncollectable note of $22,011.00 *See* Exhibit10.  Given the lack of

complete descriptions in the journal it is possible without additional information from Darakjian Jewelers to ascertain why the receivable was written off.

**Potential collection of Management Fees and from RHS**

The Debtor did not produce a schedule or ledger of payments from RHS. As indicated earlier in my report the RHS intercompany transactions were not included by the Debtor in the spreadsheet or ledger I requested. I reviewed the ML Account records and prepared a list of the transactions in the three years prior to filing. I forwarded the list via email to the Debtor and counsel to confirm and inquire whether the transfers in were loans or payment of management fees. I had not received a response from the Debtor to and inquired after the deposition on as to the status of the response. Ara Darakjian advised me that round numbers are loans to Residents First and that the remaining numbers are payments of management fees owed by RHS to Residents First. In applying Ara Darakjian description to the list of transfers below it appears some management fees were paid and other months are still owed to the Debtor. The list of the transfers from RHS to Residents First is below.

Transfers from RHS to Residents First

| | |
|---|---|
| 11-15-21 | $3,690.80 |
| 3-14-22 | $10,000.00 |
| 4-27-22 | $3,300.00 |
| 4-27-22 | $7,300.00 |
| 4-27-22 | $7,721.50 |
| 6-13-22 | $6,961.17 |

22

| | |
|---|---|
| 7-5-22 | $ 6,961.20 |
| 7-11-22 | $6,836.10 |
| 8-29-22 | $6,836.10 |
| 12-12-22 | $7,626.10 |
| 12-12-22 | $7,749.80 |
| 2-27-23 | $7,749.80 |
| 2-27-23 | $10,000.00 |
| 3-9-23 | $7,749.80 |
| 6-26-23 | $7,749.80 |
| 6-26-23 | $3,000.00 |
| Total: | $111,232.17 |

The Debtor did produce the invoices from Residents First to RHS for the years 2021 through December 2023. In 2021, Residents First invoiced Management Fees to RHS at the rate of $1250.00 per month for a total of $15,000 and collected only $3,690.80 which may or may not have been in payment of the management fees which leaves a balance owing of $11,309.20. In 2022, Residents invoiced RHS for Management fees at various rates for a total of $ 85,468.57 and collected in payment of the Management Fees $57,991.97. Leaving a balance owing of $27,476.60. In 2023, Residents First invoiced RHS through October 31, 2023 for Management Fees totaling $80,452.40 and collected $23,249.40, leaving a balance owing of $57,203.00.

The total amount due and payable from RHS for unpaid management fees is $95,988.80. Additionally, the Trustee confirmed that RHS made the post-petition November and December payments on January 30, 2024.

## Potential Recharacterization of Debt to Equity or Equitable Subordination

As of December 31, 2023 the intercompany debt was $437,893.06 minus $98,000.00 SBA loan equals $339,893.06 (loans from the Related Entities). *See* Exhibit 11. There are two at least arguments to support a cause of action to recharacterize the debt to equity. The first is that Management Agreement requires Founding Partners LLC to pay all costs incurred in connection with management of the Communities. Pursuant to section 2.02 of the Property Management Agreement, Founding Partners LLC agreed to pay Debtor a fee equal to 3.5% of the income for each of the Communities plus all of Debtor's out of pocket costs and expenses incurred for the management of the Communities (the "Fees"). Founding Partners further agrees to indemnify Debtor for all claims in connection with Debtor's management of the Communities and "arising out of the performance or non-performance of Manager's duties." page 12, Section 5.02. Accordingly, it can be argued that these are not loans but in fact contributions by Founding Partners LLC through the Related Entities to cover the expenses in excess of the Management Fees.

The second argument supports the first and may be independent basis for reclassification of the current loan balance. It appears from the Debtors records that on January 1, 2022 and on January 1,2023 the Debtor did in fact recharacterize all or a significant portion of the prior year's debt to equity. *See* Exhibit 12.

Furthermore, it can be argued that once the debt is reclassified to contributions to capital it is not available to be used as a setoff.

Also, an argument for equitable subordination under 510(c) of the bankruptcy code of the insider debt could be made which, if successful may also eliminate any potential set-off argument raised by the Related Entities.


## Potential Cause of Action for Excessive Compensation and Vehicle Expense or For Contribution from Family Enterprise

Ara Darakjian receives an annual salary of $214,500 from Residents First, that salary is allocated to for Management be paid from the asset management fee received by the Debtor from the Communities. Ara Darakjian is the sole owner of TIR Equities, TIR Capital, and the managing member of Founding Partners and spends some time negotiating with vendors on behalf of Darakjian Jewelers. Essentially, he runs the Family Enterprise, however, he is only paid from Residents First. If Ara Darakjian's time can be allocated and paid by all the Related Entities than it is possible that a portion of the Management Fee collected could be re-directed as a distribution to the unsecured creditors.

Residents First leases a 2023 Range Rover for Ara Darakjian with a monthly payment of $2,378.47. As the sole managing member, it was his decision to lease this vehicle in January of 2023. The prior vehicle leased by Residents First for his use had a monthly payment of $568.63. While the trustee acknowledges that cost

of vehicles increased in the three years from the prior lease, the sum of $2,378.47 per month maybe characterized as excessive. The Trustee posits that as more reasonable lease payment in January of 2023 would have been at least $1,000.00 less per month. Again, the $1,000.00 in saving over 3 years is an additional $36,000.00 that could be allocated to unsecured creditors.

These may not be strong arguments because the salary and the car payments are effectively being paid by the Related Entities via loans or contributions to the Debtor to cover the shortfall.

## Potential Cause of Action to Pierce the Veil of LLC and or Alter Ego

While a formal cause of action for Alter Ego an or to pierce the veil of the LLC will require additional investigation there is a potential claim that merits further investigation or discovery. Below is a comprehensive list of elements of the claim. While some of the elements exist in this case, other elements are not applicable.

- Commingling of funds and other assets, failure to segregate funds of the separate entities and the unauthorized diversion of corporate funds or assets to other than corporate uses
- The treatment by an individual of the assets of the corporation as his own
- The failure to obtain authority to issue stock or to subscribe to or issue the same
- The holding out by an individual that he is personally liable for the debts of the corporation, the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities
- The identical equitable ownership in the two entities, the identification of the equitable owners with the domination and control of the two entities,

identical directors and officers in separate entities responsible for supervision and management, sole ownership of all stock in a corporation by one individual or the same members of a family

- The use of the same office or business location, the employment of the same employees and/or attorney
- The failure to adequately capitalize the corporation, the total absence of corporate assets and undercapitalization
- The use of the corporation as a mere shell, instrumentality or conduit for a single venture
- The concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities
- Disregard of the legal formalities and the failure to maintain arm's length relationships among related entities
- The use of the corporate entity to procure labor, services or merchandise for another person or entity
- The diversion of assets and liabilities from a corporation by or to a shareholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another
- The contracting with another with the intent to avoid performance by use of a corporate entity as a shield to personal liability
- The formation and use of a corporation to transfer the existing liability of another person or entity

**Potential Cause of Action Against Founding Partners LLC to Enforce the Management Agreement and Pay Creditors in Full**

The support for this potential cause of action against Founding Partners LLC is the Management agreement itself and the basis for the claim in the language in the Management Agreement and was discussed above and is also set forth in the objection to confirmation (dkt# 98) and motion to convert (dkt#105 ) filed by Champion Home Builders.

## TRANSACTIONS WITH RELATED ENTITIES REQUIRING ADDITIONAL INVESTIGATION

The following transactions require further investigation, the Debtor is either unable to provide sufficient information to make a determination or has yet to provide it. Ara testified on April 19, 2024 that he does not know the rationale behind these entries in the general ledger.

To clear out Darakjian Jewelers FR Receivables 1-1-23:                   $340,127.78

To write off Uncollectable Note:          10-31-23- Darakjian Jewelers   $22,011.00

To write off Uncollectable receivables:10-31-23- Ara Darakjian          $34,035.60

To write off Uncollectable receivables:10-31-23- Founding Partners      $34,992.72

To write off Uncollectable receivables: 10-31-23- Residential Co-       $45,473.44

The most recent Monthly Operating Report ("MOR") filed with the court on March 20, 2023 (dkt # 85) p.4 of 19 discloses an asset "Notes Receivable" amount of $561,063.31. When questioned at the 2004 Examination on April 19,2021, Ara Darakjian could not provide a definitive answer to explain the entry, and as stated above counsel for the Debtor indicated that monthly financials of the Debtor were in the process of being restated and implied that Amended MORs would be filed.

## DEBTOR'S FINANCIAL ABILITY AND FEASIBILITY

The Debtor's plan acknowledges that the Debtor needs the financial support from the related entities to provide a distribution to creditors. The support proposed is detailed the Debtor's Amended Plan (dkt#73). The actual plan support agreement has yet to be filed as a plan exhibit by the Debtor. It has been filed as Exhibit 5 to Objection to Confirmation of Champion Home Builders (dkt#98). It is the Trustee's position that this is not sufficient notice to creditors or to the Court.

The legal issues relating to the plan support agreement are clearly articulated by the US Trustee in its objection to confirmation (dkt #97) and by Champion Home Builders in its objection to confirmation (dkt # 98) pages 8-11.

As stated above, historically, the Debtor received loans or contributions from related companies to meet its monthly financial obligations. Accordingly, the Trustee questions whether this Plan Support Agreement provides any additional benefit to the Debtor. An argument can be made that the Debtor should negotiate in good faith (as required by the Bankruptcy Code) a distribution to unsecured creditors and that pursuant to the language of the Management Agreement Founding Partners LLC is required to support those payments without a "Plan Support Agreement". I know the Debtor will vehemently dispute this argument and therefore, the language of the Management Agreement will need to litigated by the parties. The Trustee does agree that this Debtor has not shown that it can operate post confirmation without the assistance of loans or contributions from the

Related Entities, Founding Partners LLC included. In comparing the Debtors balance sheet as of October 31, 2023 (dkt# 1 page 6 of 16) with the balance sheet as of February 29, 2024 (dkt#85 page 4 of 14) the Debtor has borrowed post-petition in excess of $ 283,521.67 to meet its monthly obligations. I understand why the Debtor plan to restate its monthly financials because the numbers do not appear logical given the Debtors business. In summary, I am not convinced that the proposed support agreement is sufficient.

## CONCLUSION

The Trustee believes and has suggested to both the Debtor and Champion Home Builders on more than one occasion this case should be mediated by someone on our local mediation panel. The costs to litigate confirmation and to pursue and defend the potential causes of action are better spent on payments to creditors.

As indicated in this report there is still some further information that was just produced to the Trustee and it needs further review to complete the investigation. Accordingly, this report may be amended for many reasons, including but not limited to, the production of more documents, the restatement of the financials or if the Debtor is able to answer some or all of the unanswered questions relating to the ledger transactions with the Related Entities.

April 21, 2024                    Respectfully Submitted,
                                  /s/Deborah L. Fish
                                  Sub Chapter V Trustee
                                  211 West Fort Street Suite705
                                  Detroit, Mi 48226
                                  dfish@allardfishpc.com